*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* NS.

UNPUBLISHED
July 23, 2026
11:22 AM

No. 378295
Wexford Probate Court
LC No. 2023-001287-MI

Before: MARIANI, P. J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

Respondent, NS, appeals as of right the probate court order which continued his involuntary mental health treatment order as well as his continued hospitalization at Walter Reuther Psychiatric Hospital (Reuther). We affirm.

## I. BACKGROUND

The Ingham County Probate Court issued an involuntary mental health treatment order, often referred to as a civil commitment, for respondent under Michigan's Mental Health Code, MCL 330.1011 *et seq*., in September 2023. It found that respondent was a "person requiring treatment" and ordered respondent to undergo a combination of hospitalization and assisted outpatient treatment (AOT) for a mood disorder which made respondent a threat to himself and others. Venue was subsequently changed to Wexford County (the probate court). The record indicates that respondent's outpatient treatment over the next year was largely unsuccessful. The probate court ordered respondent to be hospitalized at Reuther in October 2024 after several instances of noncompliance with his treatment orders, including making threats to hospital staff, nonattendance of medical appointments, elopement from adult foster care facilities, and failure to take prescribed medications.

Following a hearing in May 2025, the probate court entered an order for continuing mental health treatment stating that services were to continue to be provided to respondent by Northern Lakes Community Mental Health, including the following: a case management plan, case management services, all services recommended by the treatment provider, medication, blood or urinalysis to determine compliance with or effectiveness of prescribed medication, educational training, supervised living, assertive community treatment team services, substance use disorder treatment, substance use disorder testing, and any other services prescribed to treat the individual's

-1-

mental illness and either to assist the individual in living and functioning in the community or to help prevent relapse or deterioration that may reasonably be predicted to result in suicide or the need for hospitalization. The court's order then specified a number of these other services, stating that "the individual shall comply with the recommendation of the agency regarding living arrangements, medication, individual/group psychotherapy, and any other appropriate aftercare program." Finally, injectable medications were authorized if deemed necessary and appropriate by a psychiatrist or medical doctor.

In October 2025, following the filing of another six-month review report in which a psychiatrist opined that respondent continued to be a person requiring treatment,[1] respondent filed a petition objecting to the report, requesting a hearing, and requesting entry of an order discharging him from involuntary mental health treatment.[2]

The probate court held a hearing on the petition on November 4, 2025. It took testimony from respondent and Dr. Daniel Blake, a clinical psychologist employed by Reuther. Dr. Blake reported that respondent was currently doing well in a supervised structured setting, but it was his opinion that respondent had "no insight of the severity of his difficulty" or of the "potential seriousness of harm that he pose[d] to both himself and others." Specifically, it was reported that respondent believed that he only needed medication for Attention-Deficit/Hyperactivity Disorder without any treatment for his mood disorders. Dr. Blake believed that respondent needed to go through a "step-down process" and incrementally show that he was capable of managing himself, first in a locked group home and eventually with more independence. However, Dr. Blake reported that respondent was not working with that plan and did not like it—respondent wanted to be discharged and told Dr. Blake that he wanted to live with his mother and sister.

Dr. Blake also described behavioral incidents at the hospital in August and October 2025, including respondent punching a wall and having a physical altercation with another patient. Hospital staff also reported that respondent tried to offer a friend money to help him escape the hospital and that he told a friend that he had plans to kill his guardian and a community mental health worker. Those incidents were, in Dr. Blake's opinion, reflective of respondent's impulsiveness and continued poor judgment when agitated. Thus, it was Dr. Blake's opinion that respondent had not met his discharge criteria at that time. Dr. Blake also noted that respondent had previously eloped from two adult foster care placements.

Respondent then testified that he wanted an AOT treatment order because "I've been doing everything like I'm supposed to do, I've been taking my meds, I've been going to all my groups." Further, in describing the altercation with the other patient, he testified that the other patient charged him, respondent tried to walk away, the other patient started punching him, and respondent defended himself, i.e., he testified that it was a matter of self-defense. He denied punching a wall

---

[1] In the report, the psychiatrist also listed the medications that he proposed prescribing to respondent for the next six months.

[2] NS is the respondent to the involuntary mental health treatment petition and so is referred to as "respondent" herein, despite the fact that, somewhat confusingly, NS is appealing from the denial of his petition for entry of an order discharging him from said treatment.

in August but admitted that he had punched a wall on another occasion. Respondent stated that he wanted "a chance to prove [himself] out in the community." He believed that he was able to stay on his medications, get a part time job, and participate in online schooling. Thus, respondent did not contest the underlying mental health order but wanted to be released from the psychiatric hospital and continue outpatient therapy.

The trial court denied respondent's petition for discharge. It found that respondent was doing well in the structured environment of the psychiatric hospital, and that he would not be released from the hospital until he had "demonstrated an ability to develop the insight and coping skills necessary not to be a threat to himself or others." The court indicated that all of the services referenced in the May 2025 order, as delineated above, would be continued. The court then issued a written order to that effect.

This appeal followed.

## II. ANALYSIS

On appeal, respondent does not dispute his underlying mental health diagnosis, but argues that the trial court abused its discretion when it ruled that respondent should remain hospitalized. Respondent also argues that his due-process rights were violated because petitioner did not meet its statutory requirements to establish a treatment plan or case service plan and discuss it with respondent, nor did the probate court consider respondent's mental health service plan on the record at the November 2025 hearing on respondent's petition for discharge.

## A. PETITION FOR DISCHARGE FROM TREATMENT ORDER

In civil-commitment proceedings, we review a probate court's dispositional rulings for abuse of discretion and the probate court's underlying factual findings for clear error. *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018). A probate court abuses its discretion when its decision falls "outside the range of reasonable and principled outcomes" or when it makes an error of law. *Id*. (quotation marks and citation omitted). A probate court's factual findings are clearly erroneous when this Court "is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. (quotation marks and citation omitted). We review the probate court's interpretation and application of the Mental Health Code de novo. *Id*.

First, it is necessary to provide a brief overview of the portions of the Mental Health Code relevant to this case. MCL 330.1472a provides:

> (1) Upon the filing of a petition under section 434 and a finding that an individual is a person requiring treatment, the court shall issue an initial order of involuntary mental health treatment that shall be limited in duration as follows:

> (a) An initial order of hospitalization shall not exceed 60 days.

> (b) An initial order of assisted outpatient treatment shall not exceed 180 days.

(c) An initial order of combined hospitalization and assisted outpatient treatment shall not exceed 180 days. The hospitalization portion of the initial order shall not exceed 60 days.

(2) Upon the receipt of a petition under section 473 before the expiration of an initial order under subsection (1) and a finding that the individual continues to be a person requiring treatment, the court shall issue a second order for involuntary mental health treatment that shall not exceed 90 days.

(3) Upon the receipt of a petition under section 473 before the expiration of a second order under subsection (2) and a finding that the individual continues to be a person requiring treatment, the court shall issue a continuing order for involuntary mental health treatment that shall not exceed 1 year.

(4) Upon the receipt of a petition under section 473 before the expiration of a continuing order of involuntary mental health treatment, including a continuing order issued under section 485a or a 1-year order of hospitalization issued under former section 472, and a finding that the individual continues to be a person requiring treatment, the court shall issue another continuing order for involuntary mental health treatment as provided in subsection (3) for a period not to exceed 1 year. The court shall continue to issue consecutive 1-year continuing orders for involuntary mental health treatment under this section until a continuing order expires without a petition having been filed under section 473 or the court finds that the individual is not a person requiring treatment.

The Mental Health Code also provides for periodic reviews of an individual's status pursuant to MCL 330.1482:

Each individual subject to a 1-year order of involuntary mental health treatment has the right to adequate and prompt review of his or her current status as a person requiring treatment. Six months from the date of a 1-year order of involuntary mental health treatment, the executive director of the community mental health services program responsible for treatment or, if private arrangements for the reimbursement of mental health treatment services have been made, the hospital director or director of the assisted outpatient treatment program shall assign a physician or licensed psychologist to review the individual's clinical status as a person requiring treatment.

A report on the results of the periodic review must be prepared and provided to the individual subject to the treatment order and their attorney, guardian, and nearest relative or designee. MCL 330.1483. If the report

concludes that the individual requires continuing involuntary mental health treatment and the individual or the executive director objects to the conclusions, the individual or the executive director has the right to a hearing and may petition the court for discharge of the individual from the treatment program. [MCL 330.1484.]

The resultant hearing is conducted as follows:

> (1) Upon a hearing under section 484, if the court finds that an individual under an order of involuntary mental health treatment is no longer a person requiring treatment, the court shall enter a finding to that effect and shall order that the individual be discharged.

> (2) Upon a hearing under section 484, if the court finds that an individual under a 1-year order of involuntary mental health treatment continues to be a person requiring treatment, and after consideration of complaints submitted under section 483(2), the court shall do 1 of the following:

> (a) Continue the order.

> (b) Issue a new continuing order for involuntary mental health treatment under section 472a(3) or (4).  [MCL 330.1485a.]

In this case, respondent effectively conceded on appeal that he was still a person requiring treatment, that "[he was] willing to have the court continue the AOT order," and that he only objected to his continued hospitalization.

Because the probate court found at the hearing that respondent was still a person requiring treatment, it was required to either continue respondent's treatment order or issue a new continuing treatment order.  MCL 330.1485a.  In this case, the trial court chose to continue the current treatment order, which meant that respondent remained hospitalized.  This decision was not an abuse of discretion.  Dr. Blake testified that respondent had a history of nonparticipation with his previous court-ordered outpatient treatment and elopement from adult foster care facilities.  He further testified that respondent showed improvement in the structured environment of the psychiatric hospital, but that he was not ready to be discharged, as evidenced by respondent's multiple instances of threatening and assaultive behavior in the months before the hearing.

Thus, the probate court did not abuse its discretion when it ordered respondent's treatment and hospitalization to continue.

## B.  MENTAL HEALTH SERVICE PLAN

Respondent also argues that his due-process rights were violated because there was no evidence that petitioner created a mental health service plan or discussed it with respondent as required under the Mental Health Code.

"Whether a person has been afforded due process is a question of law that is reviewed de novo." *In re Jestila*, 345 Mich App 353, 355 n 3; 5 NW3d 362 (2023) (quotation marks and citation omitted).  However, we note that this issue was not raised before the probate court and so is unpreserved.  To preserve an issue for appellate review, a party must raise objections before the probate court while it has the opportunity to correct the error.  See *id*.  A party's failure to timely raise an issue in a civil case generally waives appellate review of that issue.  *In re Guardianship of AMMB*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368915), slip op at 2.  However, "there are certain discrete civil matters in which plain error applies."  *Id*. (quotation

marks and citation omitted). The constitutional protections implicated by civil-commitment proceedings under the Mental Health Code make plain error analysis appropriate in this case. See *In re MAT*, ___ Mich App ___, ___-___ & ___ n 1; ___ NW3d ___ (2024) (Docket No. 369255); slip op at 2-3 & 3 n 1.

In order to avoid forfeiture under the plain error rule, the appellant bears the burden of demonstrating that an error occurred, that the error was clear or obvious, and that the error affected the appellant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error affects an appellant's substantial rights if it "affected the outcome of the lower court proceedings." *Id*. Even if the appellant establishes plain error that affected his or her substantial rights, "an appellate court must exercise its discretion in deciding whether to reverse." *Id*. Reversal will be warranted when the error "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id*. (quotation marks, citation, and brackets omitted).

The Mental Health Code states the following requirements in regard to the creation of a mental health service plan:

> The responsible mental health agency for each recipient shall ensure that a person-centered planning process is used to develop a written individual plan of services in partnership with the recipient. A preliminary plan shall be developed within 7 days of the commencement of services or, if an individual is hospitalized for less than 7 days, before discharge or release. The individual plan of services shall consist of a treatment plan, a support plan, or both. A treatment plan shall establish meaningful and measurable goals with the recipient. The individual plan of services shall address, as either desired or required by the recipient, the recipient's need for food, shelter, clothing, health care, employment opportunities, educational opportunities, legal services, transportation, and recreation. The plan shall be kept current and shall be modified when indicated. The individual in charge of implementing the plan of services shall be designated in the plan. [MCL 330.1712(1).]

Respondent argues that, at the November 2025 hearing, "testimony should have been brought before the court as to the specific service plan, goals, measures of achievement, and who was responsible for implementing it, as the statute requires." But respondent fails to mention that he did not petition the court to address the lack of a service plan, inadequacy of the service plan, or otherwise allege that petitioner failed to comply with MCL 300.1712(1). Instead, the petition only alleged that respondent was not a person requiring continuing involuntary mental health treatment and should be discharged. While respondent's counsel argued at the hearing on the discharge petition that there was no plan in place for respondent's eventual discharge, counsel did not argue that petitioner failed to comply with the statute.

Regardless, respondent does not explain on appeal why petitioner should have brought a witness to the hearing to testify about an issue that was never before the court. In other words, respondent cannot demonstrate that petitioner should have known that respondent would raise the service plan issues for the first time at the hearing, and that it should have brought a witness to the hearing to testify about that issue as a result. Respondent likewise does not explain how it was clear or obvious error that affected his substantial rights for the court to fail to require such

testimony under these circumstances. *Carines*, 460 Mich at 763. Again, respondent bears the burden of persuasion on this issue, not petitioner. See *id*. Thus, we cannot find that respondent met his burden of demonstrating that plain error occurred in this matter when the trial court did not require testimony regarding the service plan, goals, etc., at the November 2025 hearing.[3] *Id*..

In summation, we find that Dr. Blake's testimony supported the probate court's findings, and the probate court did not err when it ordered that respondent was to remain hospitalized.

Affirmed.

/s/ Philip P. Mariani
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace

---

[3] To be clear, this Court agrees that the mental health agency responsible for respondent's treatment is required to comply with MCL 330.1712, but that issue was not properly before the trial court at the time of the November 2025 hearing. Nothing in this opinion should be construed to deny respondent's right to properly raise this issue in the probate court.